**Ruth HELLMANN, and Robert Hellmann, Plaintiffs/Appellants,**

v.

**DROEGE'S SUPER MARKET, INC. and Hillermann Nursery and Florist, Defendants/Respondents.**

No. 68737.

Missouri Court of Appeals,
Eastern District,
En Banc.

Jan. 28, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 20, 1997.

Application to Transfer Denied
May 27, 1997.

---

Gray & Ritter, P.C., Paul J. Passanante, Joan J. Tanner, St. Louis, for plaintiffs/appellants.

Evans & Dixon, Edward S. Meyer, Stephen E. Winborn, St,. Louis, for Droege's Super Market.

Godfrey, Vandover & Burns, Inc., Denis C. Burns, John B. Singleton, St. Louis, for Hillermann Nursery.

PUDLOWSKI, Judge.

Ruth Hellmann (plaintiff) brought suit for personal injuries on a premises liability theory against defendants, Droege's Supermarket, Inc. (Droege's) and Hillermann Nursery and Florist, Inc. (Hillermann). Plaintiff sustained serious injuries while returning to her truck from the store when she slipped and fell on ice on Droege's parking lot. Her husband brought a derivative claim for loss of consortium. The trial court directed a verdict in favor of defendants at the close of plaintiffs' evidence. Because defendant Hillermann had no contractual duty or right to plow Droege's parking lot on the day of the injury, we hold the trial court did not err in directing a verdict in favor of Hillermann. We hold the trial court erred in directing a verdict in favor of Droege's. We remand for a new trial on the claim against Droege's.

When reviewing a motion for directed verdict, this court views the evidence and all inferences to be made from it in the light most favorable to the plaintiff. *Martin v. Pashia*, 892 S.W.2d 681, 683 (Mo.App. E.D.1994). We disregard all evidence and inferences to the contrary to determine if plaintiff made a submissible case. *Id.* A directed verdict is proper only when reasonable minds could not differ as to the proper verdict. *Id.* We recite the facts with this standard in mind.

On January 4, 1991, plaintiff, while volunteering for the Washington Elks Club, went to Droege's to purchase food for a dinner she was to prepare for the Elks Club the next day. She testified that it was a cold and clear day. There had been winter storms the week before and there was ice and snow remaining on the ground. Her porch and driveway were clear of ice and she had no trouble driving on the roads on her way to the store. The only visible ice that remained was on the sides of the street and it did not affect travel.

When she arrived at Droege's parking lot she observed other cars parked in the two rows of parking at the side of the store. There were several cars in the row in front of her truck, the first row, but plaintiff was not sure if the row was completely filled or not. She estimated that there were quite a few cars in the lot that day, approximately fifteen. She noticed there was some ice on the lot but did not realize how bad it was. She pulled into an open parking space between two cars in the second row of parking. She made her way into the store and did her shopping. Plaintiff noticed that the ground near her truck was completely icy and that the ground closer to the store, in the first row, was icy as well, but patchy. The entrance to the store was clear of ice. When she was ready to leave a store clerk helped her to her truck. He pushed the cart as she held onto it. The clerk loaded her groceries into her truck and then pushed the cart back to the store. Plaintiff made her way around the truck and reached into her pocket to get her keys. It was then that she fell on the ice

and injured her left arm. Since the time of the accident, plaintiff has had three surgeries and numerous doctor visits.

Hillermann provided snow removal services to Droege's for approximately thirty years. Pursuant to an oral agreement, Hillermann, on its own initiative, sent employees to service Droege's lot after an initial snow. The service entailed plowing and application of calcium chloride. Hillermann also plowed the lot a second time and reapplied chemicals if Droege's requested further service. In this case, Hillermann plowed and applied calcium chloride on Droege's lot after the initial storm on December 30, and again on December 31, 1990. They also plowed on January 2 and January 3, 1991. On January 4, 1991, there was no additional accumulation of snow or ice and Hillermann was not called to plow the lot. One of Droege's clerks applied more calcium chloride to the lot on January 4, 1991, and using a shovel tried to chip away the ice that covered the second row of parking.

At the close of plaintiffs' case both defendants moved for a directed verdict, arguing the danger posed by the icy parking lot was open and obvious and, therefore, defendants had no duty to take remedial actions or warn of the danger. The trial court granted the motions and plaintiffs appealed.

■ In point one, plaintiffs argue that the trial court erred in directing a verdict in favor of Droege's because the icy condition was not known or obvious as a matter of law, and further, even if it was a known or obvious danger, the issue of whether Droege's was negligent is a question of fact for the jury. In a negligence action, liability exists only when a defendant's conduct falls below the applicable standard of care established to protect against unreasonable risk of harm. Restatement (Second) of Torts, § 282. The standard of care applicable is a question of law for the courts. Whether a defendant's conduct fell below that standard of care is a question of fact for the jury. The trial court, however, will not submit a case to the jury if there is no evidence to support a finding that a defendant's conduct fell below the standard of care. *Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo. banc 1993). We find the evidence

supported a finding that the icy condition was an open and obvious danger. However, that determination does not, in and of itself, fully exonerate the landowner of its duty of care. Restatement (Second) of Torts § 343A.

Missouri cases involving a determination of breach of a duty of care by a landowner for an open and obvious danger are often difficult to reconcile. Generally the cases are extremely fact intensive. As a result, we must carefully consider the applicable standard of care and tediously apply our facts to that standard. We notice the applicable standard of care summarized in § 343A of the Restatement (Second) of Torts was adopted in *Harris.*

In *Harris,* the Supreme Court cited §§ 343 and 343A of the Restatement (Second) of Torts. Section 343 states:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

■ Section 343A provides a caveat on liability when a condition is found to be "known or obvious." Section 343A states:

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, (*unless the possessor should anticipate the harm despite such knowledge or obviousness.* emphasis added).

Because the icy conditions on the Droege's parking lot were open and obvious, we will look at § 343A and *Harris* to determine the standard of care that remains with a landowner in this situation. If the risk of harm exists only if an invitee fails to exercise due care, the landowner is relieved of liability and the case is not submitted to the jury. *Har-*

*ris*, 857 S.W.2d at 227. However, if the landowner should anticipate that the risk of harm exists even if the invitee exercises due care in the face of the open and obvious danger, then the landowner is not relieved of liability. Whether or not the landowner should have anticipated that an invitee would be harmed, despite an open and obvious hazard, is a matter for the jury. Accordingly, we must determine, after reviewing the evidence in the light most favorable to the plaintiff, whether reasonable minds could differ on the issue of anticipation of harm. We find that reasonable minds could differ as to whether Droege's should have anticipated harm to its invitees. In fact, after a thorough examination of the transcript, we find evidence which would support a finding Droege's actually did anticipate harm to its invitees. Hence, the trial court erred in directing a verdict for defendant Droege's. The claim should have been submitted to the jury.

Droege's argues that plaintiff had an alternative route into the store, which was clear of ice. It claims plaintiff failed to exercise due care because she failed to use an available, safe route. It was only this lack of due care, Droege's argues, that created the risk of harm. It asserts, therefore, that it had no duty to anticipate the harm. We disagree because there is no conclusive evidence to suggest that a parking area existed which was totally clear of ice and which had a clear path for an invitee into the store, or that such an area was available to the plaintiff at that time. The evidence reveals that the parking spaces in the second row were completely icy and in the first row they were patchy. The lot was occupied, almost to capacity, leaving few spaces to choose from. Additionally, Droege's employee applied calcium chloride on the parking lot in the morning prior to the injury. He also attempted to chip away the ice in the second row of the parking lot that morning. Furthermore, a Droege's employee helped the plaintiff to her truck as she held on to the grocery cart, which was evidence suggesting a finding Droege's did anticipate that its customers may fall on the ice. Viewing all of this evidence as a whole and in the light most favorable to the plaintiff, the trial court erred

in taking the case from the jury as, at the very least, reasonable minds could differ on fact issues of whether Droege's should have anticipated the harm and did anticipate the harm and breached its duty of care. When there exists evidence which suggests that the defendant breached this standard of care, the case must be submitted to the jury. *Harris*, 857 S.W.2d at 225.

■ A landowner is entitled to rely on its invitees to exercise ordinary care when an open and obvious condition exists. Droege's was entitled to expect its customers to "exercise ordinary perception, intelligence and judgment, discover this obvious condition, appreciate the risk it presented, and take the minimal steps necessary to avert a tragedy." *Id.* at 226. However, Droege's had a duty to anticipate that an invitee, even after using such perception and intelligence, might park her vehicle on an icy or patchy space, traverse the parking lot to fulfill her shopping objective, and be harmed while doing so. In other words, the risk of harm existed even if plaintiff exercised due care and the case must be submitted to the jury. As a matter of comparative fault, the jury has the duty to assess the proportionate liability, if any. *Cox v. J.C. Penney Co., Inc.*, 741 S.W.2d 28,30 (Mo. banc 1987).

Comment F to Section 343A further bolsters our finding by clarifying that a landowner still bears a measure of liability where he should recognize that a person will proceed to encounter an open and obvious hazard because the benefits for the invitee *and* the property owner make it foreseeable. Put another way, the benefits for the invitee and the owner outweigh the risks presented by the hazard. This is one critical factual distinction between *Harris* and the instant case. In *Harris*, a car left on an inclined road rolled down the sloped road and into a lake, tragically drowning three children. The Court held that the slope of the road and the incline into a lake was an open and obvious condition. *Harris*, 857 S.W.2d at 227. The Court ruled in favor of the defendants as a matter of law because the actions of the plaintiff were so patently unreasonable and there was no possible benefit to the defendants. In other words, the actions of the

plaintiff were not foreseeable to the defendant because the risks of parking on the incline with children in the car outweighed the benefits to be had by doing so. Therefore, the defendants had no duty to anticipate the harm to the plaintiff. In the instant case, there is an open question of fact as to whether a reasonable person would park on an icy store parking lot and take reasonably anticipated risk of walking on ice in order to enjoy the benefit of shopping at Droege's. We repeat, this question of fact is to be left to the jury, unless no reasonable minds could differ on the issue.

In point two, plaintiff argues that the trial court erred in directing a verdict in favor of Hillermann. We disagree. Plaintiff first argues that once a landowner has undertaken to remedy a situation of snow or ice, the landowner has a duty to do so non-negligently. *Alexander v. American Lodging, Inc.*, 786 S.W.2d 599, 602 (Mo.App. W.D. 1990). Plaintiff's reliance on *Alexander* is misplaced because Hillermann is not the landowner. Plaintiff next argues there can be tort liability to a third party without privity of contract where one assumes responsibility for property and fails to perform a duty which may result in injury to a third party. In *Westerhold v. Carroll*, 419 S.W.2d 73, 81 (Mo.1967) our Supreme Court recognized a public policy exception to the general rule that no tort cause of action can arise from breach of a contractual duty without privity of contract. We do not reach the issue of whether this exception applies in this case because there is no evidence that Hillermann had a contractual duty to insure the safety of the parking lot on January 4, 1991. Hillermann's agreement with Droege's was to plow the parking lot after each winter storm. They did plow the day of the storm. Any other arrangements for snow and or ice removal were on a call back basis. There is nothing to support a finding Hillermann's had a contractual duty or attempted to maintain Droege's parking lot on January 4, 1991. In fact they had no legal right to plow the lot that day. The facts do not support a theory of liability for Hillermann's as there is no agreement or undertaking that obligated Hillermann to insure the safety of the parking lot on January 4, 1991.

The directed verdict in favor of Hillermann is affirmed. The directed verdict in favor of Droege's is reversed and remanded for further proceeding. Husband's derivative loss of consortium claim against Droege's is also reinstated.

REINHARD, SIMON, CRANDALL, KAROHL, GARY M. GAERTNER, DOWD, RHODES RUSSELL and HOFF, JJ., concur.

AHRENS, C.J., concurs in result in separate concurring opinion.

GERALD M. SMITH and CRANE, JJ., concur in result and separate concurring opinion by GERALD M. SMITH, J.

GRIMM and CRAHAN, JJ., concur in result only.

AHRENS, Chief Judge, concurring.

On rehearing, I am persuaded that on the record in this case, reasonable minds could differ as to whether Droege's should have anticipated harm to plaintiff and the trial court therefore erred in directing a verdict for Droege's.

However, I disagree with the portion of the majority opinion which holds that Droege's had a duty to anticipate that an invitee might be harmed by an open and obvious danger. The general rule in Missouri is that a possessor of land does not have a duty to protect invitees against conditions that are open and obvious as a matter of law. *Harris v. Niehaus*, 857 S.W.2d 222, 226 (Mo. banc 1993); *Peterson v. Summit Fitness, Inc.*, 920 S.W.2d 928, 933 (Mo.App. 1996). *Harris* adopts Restatement (Second) of Torts, § 343A(1) which spells out an exception to the general rule and recognizes a duty where the possessor should anticipate the harm despite the open and obvious condition.

In *Harris*, the Supreme Court noted that its decision in *Cox* "did not intend to abrogate the open and obviousness of a condition as a consideration for the court in determining a possessor of land's standard of care." *Harris*, 857 S.W.2d at 227. *Harris* recog-

nized that "a possessor of land is not an absolute insurer of the well-being of its invitees." *Id.* at 226. I do not believe that *Harris* or the Restatement (Second) of Torts, §§ 343 and 343A impose a duty on the landowner to anticipate harm to its invitees from open and obvious conditions. Instead, no duty arises unless the landowner should anticipate harm to its invitees from the open and obvious condition. Here, there was evidence in the record on which reasonable minds could differ as to whether Droege's should have anticipated the risk of harm to plaintiff. Therefore, under the circumstances of this case, whether Droege's conduct fell short of the standard of care was a question of fact for the jury.

However, as in *Harris*, in a case where reasonable minds can not differ in determining that a landowner should not have anticipated the risk of harm, or where no risk of harm exists unless plaintiff fails to exercise due care, no duty exists as a matter of law, and a directed verdict would be proper. I am concerned that the majority opinion, contrary to the holding in *Harris*, creates a duty on the part of a landowner to anticipate harm to invitees from open and obvious dangers, thereby removing the issue as a consideration for the court in determining a possessor of land's standard of care. I therefore concur in result only.

GERALD M. SMITH, Judge, concurring.

Because I believe the law of Missouri has substantially changed as it pertains to "the open and obvious" exception to premises liability I concur with the result reached by Judge Pudlowski.

The rule originally followed in Missouri is that set forth in *Harbourn v. Katz Drug Company*, 318 S.W.2d 226 (Mo.1958)[1–3]:

A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and (c)

invites or permits them to remain upon the land without exercising reasonable care (i) to make the condition reasonably safe, or (ii) to give a warning adequate to enable them to avoid the harm …

This was taken from Restatement, Law of Torts, § 343. It basically imposed upon the possessor of land the requirement that he either make the land reasonably safe or warn the visitor of the dangerous condition. Because the duty of the landowner was met by warning of the danger, it followed that if the condition was open and obvious or was in fact known to the visitor there was no duty of the possessor to warn of the danger. The determination of duty or standard of care is a question of law for the court. *Strickland v. Taco Bell Corporation*, 849 S.W.2d 127 (Mo. App.1993)[3–7].

In *Cox v. J.C.Penney Company*, 741 S.W.2d 28 (Mo.banc 1987)[1,2] the court stated that "An open and obvious danger dispenses with the duty to warn, *Harbourn*, unless the occupier should anticipate harm despite constructive knowledge on the part of the invitee". That statement was based on Restatement of Torts, Second, § 343A. The Restatement referred to in *Harbourn* was the original Restatement. In 1963 and 1964, between the decision in *Harbourn* and the decision in *Cox*, Restatement Second was adopted and promulgated and therein § 343 was changed and § 343A was added. The *Cox* court utilized Restatement, Second, §§ 343 and 343A, apparently adopting them as the law of Missouri. Section 343 of Restatement, Second eliminates clause (ii) of the original Restatement which obviated liability if a warning was given. The court in *Cox* also held that under principles of comparative fault, first adopted in Missouri in *Gustafson v. Benda*, 661 S.W.2d 11 (Mo.banc 1983)[3], it is left to juries to assess the relative fault of the parties in tort actions. *Gustafson* was held to modify the common law relationship between business invitors and their invitees.

Section 343A states:

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land

whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.* (Emphasis supplied)

Comment f. to § 343A fleshes out the meaning of the above quoted section by stating that there are cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding a known or obvious danger. The reason to expect harm may "arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk". *Id.*

The thrust of § 343A is to remove the issue of an "open and obvious" condition from consideration in determining the existence of a duty (the standard of care). It is now to be considered in determining breach of duty (negligence) and comparative fault or assumption of risk of the invitee. The comment establishes that § 343A creates a "reasonable man" standard as to the actions of the invitee confronted by an obvious or known dangerous condition. A "reasonable man" standard is almost by definition a factual determination for resolution by the jury. The duty of the possessor of land has, by Restatement, Second, been transformed from one of making the premises safe or warning of the danger to one of exercising reasonable care to make the premises safe. With the elimination of warning as a means to avoid liability, the open and obvious exception to the creation of duty is also eliminated.

*Cox* and *Harris v. Niehaus,* 857 S.W.2d 222 (Mo.banc 1993) have both apparently adopted Restatement, Second §§ 343 and 343A.

In *Harris v. Niehaus,* the court invoked the open and obvious exception to preclude liability by the possessor of real estate. However, the court noted that "where the danger is open and obvious as a matter of law and *the risk of harm exists only if the plaintiff fails to exercise due care,* the case is not submissible to the jury". [17] (Emphasis supplied). *Harris* does not insulate possessors from liability when a condition is open

and obvious and a plaintiff fails to exercise reasonable care. Instead, *Harris* creates a narrow exception of a possessor's duty, insulating possessors when the risk of harm from the open and obvious condition exists *solely* due to plaintiff's failure to exercise due care. Unlike the facts in *Harris,* here the condition was open and obvious but the risk of harm existed whether or not the plaintiff exercised due care.

In view of what I now perceive the law of Missouri to be, there is a question of fact for the jury to resolve, i.e., whether defendant should have anticipated the harm from the dangerous condition despite plaintiff's knowledge and the obviousness of the condition. I therefore concur in the result reached by Judge Pudlowski.